IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

RICHARD WILLIAM HEAGNEY,

       Petitioner,

v.                                CASE NO. 1:18-cv-243-AW-GRJ

SECRETARY, DEPT.
OF CORRECTIONS,

       Respondent.

_____/

## REPORT AND RECOMMENDATION

Petitioner initiated this case by filing a Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 challenging his Alachua County jury-trial conviction and life sentence for capital sexual battery. ECF No. 1.  The Respondent has filed a response to the Petition, together with a copy of the state-court record, and Petitioner has filed a reply.  ECF Nos. 32, 51.  Upon due consideration of the Petition, the Response, the state-court record, and Petitioner's reply, it is respectfully recommended that the Petition be denied.[1]

---

[1]Because the Court may resolve the Petition on the basis of the record, the Court has determined that an evidentiary hearing is not warranted.  *See* Rule 8, Rules Governing Habeas Corpus Petitions Under Section 2254.

# I. <u>State Court Procedural History</u>

The relevant procedural history of Petitioner's case may be summarized as follows.  Petitioner was charged by a second amended information with committing sexual battery on the six-year-old victim (Petitioner's granddaughter) between July 15, 2011 and October 21, 2011.  ECF No. 32-16 at 185.  Prior to trial, the State moved pursuant to Fla. Stat. § 92.54 to allow the victim to testify outside of the Petitioner's presence by closed circuit television.  Following a hearing, the court granted the motion. *Id.* at 183-84; *see* ECF No. 32-3 at 1-111 (transcript of motion hearing). Based on the evidence adduced at the hearing, the court found that there was a substantial likelihood that the victim, who was eight years old at the time of trial, would suffer at least moderate emotional or mental harm if she were compelled to testify in Petitioner's presence about the allegations of sexual abuse by him.  ECF No. 32-16 at 183-84.

The State's evidence at trial included a video of the victim's interview with a Child Protection Team (CPT) interviewer on November 1, 2011 (the day after the abuse was reported) during which the victim described in graphic detail the repeated episodes of sexual battery by Petitioner.  The victim's live testimony was received by having her and the other trial participants, including Petitioner's counsel and the jury, move to another

courtroom; co-defense counsel remained with Petitioner.  During a colloquy

between the court and counsel regarding how counsel would communicate

with Petitioner, counsel stated that he had discussed with Petitioner that

following cross-examination of the victim he would return to the other

courtroom and confer with Petitioner privately regarding the testimony.

ECF No. 32-4 at 6-11; 32-5 at 40-41.

In addition to the victim's CPT interview and live testimony, the

State's evidence included the following: Testimony by the CPT interviewer;

testimony by medical professionals who examined the victim and testified

that it is rare to find evidence of physical trauma in prepubertal children;

men's underwear bearing spermatozoa and Petitioner's DNA together with

items of the victim's clothing that were concealed in a trash bag in

Petitioner's work van; testimony by Petitioner's former wife that

corroborated some of Petitioner's sexual habits as described by the victim;

testimony from the victim's mother and aunt that they observed discharge

in the victim's underwear and that the victim complained of groin discomfort

during the time that the abuse occurred; and testimony from family

members that the victim's behavior toward Petitioner was markedly

different shortly before the victim told them about the abuse.  ECF No. 32-5

at 86-97; ECF No. 32-6 at 1-115; 32-7 at 1-83; 32-8 at 1-162; 32-9 at 1-113.

Petitioner did not testify, and although he had retained experts for trial he elected not to present their testimony.  ECF No. 32-9 at 66-68.  After conferring with counsel, Petitioner elected not to request any jury instructions on lesser-included offenses, in view of the fact that he was on parole from an earlier life sentence for armed burglary when the new offenses occurred and therefore (in his words) he would be "taking a dirt nap either way".  ECF No. 32-9 at 81-85.  After deliberating for a total of just over 30 minutes (with an intervening break to hear the victim's CPT interview again), the jury found Petitioner guilty.  ECF No. 32-10 at 89-92.

Petitioner appealed on three grounds: (1) The trial court erred in allowing a witness not qualified as a licensed psychologist to testify that the victim would suffer mental or emotional harm by testifying in Petitioner's presence; (2) Petitioner's right to confront his accuser was violated because the decision to allow the victim to testify outside of his presence was not supported by sufficient evidence; and (3) the State's closing argument was improper and deprived him of a fair trial in several ways. ECF No. 32-12 at 1-35.  The First DCA affirmed the conviction, *per curiam*, without a written opinion.  ECF No. 12-15 at 1.

Petitioner sought postconviction relief.  For purposes of the instant federal habeas petition the operative state-court pleading is his second amended motion for postconviction relief pursuant to Fla. R. Crim. P. 3.850. ECF No. 32-16 at 117-60.  Petitioner asserted eleven claims of ineffective assistance of trial counsel.  *Id.* The trial court summarily denied the motion. *Id.* at 163-82.  The First DCA affirmed, *per curiam,* without a written opinion.  ECF No. 32-19 at 1.

Petitioner then filed the Petition now before this Court, ECF No. 11, which Respondent concedes is timely.  Petitioner asserts the same three claims that he raised in his direct criminal appeal, as well as the ineffective-assistance claims raised in his postconviction motion.  *See* ECF No. 11.

## II. <u>Section 2254 Exhaustion Requirement</u>

Before bringing a habeas action in federal court, a petitioner must exhaust all state court remedies that are available for challenging his conviction, either on direct appeal or in a state post-conviction motion.  28 U.S.C. § 2254(b)(1), (c).  Exhaustion requires that prisoners give the state courts a "full and fair opportunity" to resolve all federal constitutional claims by "invoking one complete round of the State's established appellate review process."  *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999).  To properly exhaust a federal claim, a petitioner must "fairly present" the claim in each

appropriate state court, thereby affording the state courts a meaningful opportunity to "pass upon and correct alleged violations of its prisoners' federal rights." *Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (quotation omitted).

### III.   <u>Merits: Standard of Review</u>

For claims that are properly exhausted, the Anti-Terrorism and Effective Death Penalty Act (AEDPA) imposes limitations on the scope of this Court's review.  Under 28 U.S.C. § 2254(d)(2), a federal court may not grant a state prisoner's application for a writ of habeas corpus based on a claim already adjudicated on the merits in state court unless that adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  Under § 2254(e)(1), "a determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner "shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."  "'[A] state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance.'"  *Burt v. Titlow,* 571 U.S. 12*,* 134 S.Ct. 10, 15 (2013) (quoting *Wood v. Allen*, 558 U.S. 290, 301, 130 S.Ct. 841(2010)).

As to legal findings, a petitioner is entitled to federal habeas relief only if the state court's adjudication of the merits of the federal claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." § 2254(d)(1); *see Burt*, 134 S.Ct. at 15 (standard for reviewing claims of legal error by state courts is "highly deferential"). This standard "recognizes a foundational principle of our federal system: State courts are adequate forums for the vindication of federal rights." *Id*. This highly deferential standard carries special force in habeas cases asserting ineffective-assistance claims: "Especially where a case involves such a common claim as ineffective assistance of counsel under *Strickland*—a claim state courts have now adjudicated in countless criminal cases for nearly 30 years—'there is no intrinsic reason why the fact that a man is a federal judge should make him more competent, or conscientious, or learned . . . than his neighbor in the state courthouse.'" *Id*. (quoting *Stone v. Powell*, 428 U.S. 465, 494, n. 35 (1976)).

In view of the deference afforded to the state courts' adjudication of constitutional claims, "AEDPA erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court. AEDPA requires 'a state prisoner [to] show that the state court's ruling on

the claim being presented in federal court was so lacking in justification that there was an error . . . beyond any possibility for fairminded disagreement.'" *Id*. (quoting *Harrington v. Richter*, 562 U.S. 86, 131 S.Ct. 770, 786–787 (2011). "'If this standard is difficult to meet'—and it is—'that is because it was meant to be.'" *Id*. (quoting *Harrington*, 131 S.Ct. at 786). "We will not lightly conclude that a State's criminal justice system has experienced the 'extreme malfunction' for which federal habeas relief is the remedy." *Id*. (quoting *Harrington*, 131 S.Ct. at 786).

Further, when reviewing state-court decisions under § 2254, if a state appellate court issues a silent affirmance, "the federal court should 'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale" and "presume that the unexplained decision adopted the same reasoning." *Wilson v. Sellers*, ___ U.S. ___, 138 S.Ct. 1188, 1192 (2018).

## IV. <u>Discussion</u>

### A. Grounds 1 and 2: Confrontation Clause and Victim's Testimony

Petitioner's first two claims stem from the trial court's decision allowing the victim to testify outside of his presence, and may be discussed together. Petitioner first argues that the trial court erred in relying on the testimony of a licensed mental health counselor (rather than a physician or

psychologist) in finding that there was a substantial likelihood that the victim would suffer at least moderate emotional or mental harm if she were compelled to testify in Petitioner's presence.  Next, Petitioner contends that even if the trial court correctly relied on the counselor's testimony, the evidence was insufficient to demonstrate a "substantial likelihood" of at least moderate harm.  ECF No. 11 at 10-12.

The State contends that this claim is unexhausted because Petitioner did not raise this issue as one of federal constitutional law in his direct appeal.  The State argues that Petitioner's claim "hinged on whether section 827.03(3), Florida Statutes, which requires that expert opinions in child abuse cases be given by physicians or psychologists, applied to a circumstance involving the 'at least moderate mental or emotional harm' the child victim of a sex crime might suffer if required to testify in the defendant's presence, from section 92.45(1), Florida Statutes."  ECF No. 32 at 42.  Respondent concedes that Petitioner argued in his appeal that the trial court's asserted error cannot be deemed harmless because of the Confrontation Clause.  *Id.* at 42.

The Respondent's argument is not well-taken.  On direct appeal, Petitioner stated as follows regarding the trial court's decision:

> The procedure also violated the Confrontation Clause, which allows denial of face-to-face confrontation only when necessary to protect a

> child witness from trauma which would impair the child's ability to
> communicate. The court had no evidence from which it could
> anticipate trauma of the magnitude required by the Sixth Amendment
> to justify denial of confrontation.

ECF No. 32-12 at 13.  Petitioner further argued that even "if the evidence

suffced under section 92.54, it fell short under the Confrontation Clauses of

the Sixth Amendment to the U.S. Constitution and Article I, Section 16(a) of

the Florida Constitution."  *Id.* at 27.  Petitioner cited federal habeas corpus

cases in support of his argument, as well as state-law cases.  *See id.*

Thus, on this record, the Court is satisfied that Petitioner "fairly presented"

this claim to the state courts as one of federal constitutional law.

Turning to the merits of Petitioner's claim, the First DCA has

explained:

> [I]t is recognized that the defendant's right to confront his accuser
> must give way to the State's interest in sparing child victims of sexual
> crimes the further trauma of in-court testimony." *Ritchie v. State*, 720
> So.2 d 261, 262 (Fla. 1st DCA 1998). Consistent with that interest,
> sections 92.53 and 92.54, Florida Statutes, allow children to testify by
> closed-circuit television or pre-recorded video in certain
> circumstances. The United States Supreme Court has upheld similar
> statutes against Confrontation Clause challenges, *see Maryland v.
> Craig*, 497 U.S. 836, 857 (1990), and the Florida Supreme Court has
> upheld Florida's law, *see Hopkins v. State*, 632 So. 2d 1372, 1376
> (Fla. 1994). However, both the United States Supreme Court and the
> Florida Supreme Court have acknowledged that the Constitution
> requires trial court judges to make case-specific findings before
> defendants can be denied face-to-face confrontation. *Craig*, 497 U.S.
> at 857 ("The requisite finding of necessity must of course be a case-
> specific one: the trial court must hear evidence and determine
> whether use of the one-way closed circuit television procedure is

> necessary to protect the welfare of the particular child witness who seeks to testify."); *Leggett v. State*, 565 So. 2d 315, 318 (Fla. 1990) ("[T]he factual findings required by section 92.54 are necessarily related to the constitutional right to confrontation.").

*Knight v. State*, 254 So. 3d 642, 644 (Fla. 1st DCA 2018).

In *McDonald v. Sec'y Fla. Dep't of Corr.*, 632 F. App'x 586 (11th Cir. 2016) (unpublished), the Eleventh Circuit affirmed the district court's denial of federal habeas relief under circumstances similar to this case. The district court had explained that a witness's testimony received remotely is generally a violation of the Confrontation Clause,

> [b]ut there is a narrow exception for children who are alleged victims of sexual abuse. On this issue, the "clearly established Federal law, as determined by the Supreme Court of the United States," is set out in two decisions: *Coy v. Iowa*, 487 U.S. 1012 (1988), and *Maryland v. Craig*, 497 U.S. 836 (1990). The report and recommendation correctly analyzes these decisions and an Eleventh Circuit decision applying them, *Cumbie v. Singletary*, 991 F.2d 715 (11th Cir.1993). Together, *Coy* and *Craig* establish that child testimony cannot be presented remotely based only on a presumption of harm, but child testimony *can* be presented remotely based on individualized findings that the child will suffer harm, not just from testifying in a courtroom, but from testifying *in the defendant's presence.*
>
> Whether the state's factual showing was sufficient under *Coy* and *Craig* is far from clear. The issue, though, is not whether those decisions clearly authorized this remote testimony. The issue is whether those decisions clearly *prohibited* this remote testimony. The decisions did not. The state courts' rejection of Mr. McDonald's Confrontation Clause claim was not contrary to or an unreasonable application of federal law as determined by the United States Supreme Court.

*McDonald v. Crews*, No. 4:10cv428-RH/CAS, 2014 WL 1328969, at *2

(N.D. Fla. Mar. 31, 2014) (emphasis in original), *aff'd sub nom. McDonald v. Sec'y, Fla. Dep't of Corr.*, 632 F. App'x 586 (11th Cir. 2016); *see also Sanders v. Sec'y, Fla. Dep't of Corr.,* No. 4:17cv355-RH/CAS (N.D. Fla. Dec. 28, 2018) (report and recommendation adopted Feb. 19, 2019) (denying habeas relief where trial court made individualized findings to determine that child victim could testify out of the presence of the defendant, findings were supported by the record, and therefore case fell within the narrow exception to the Confrontation Clause for children who are alleged victims of sexual abuse).

In this case, the trial court held a hearing pursuant to Fla. Stat. § 92.54 (2011), to determine if there was a substantial likelihood that the victim would suffer at least moderate emotional or mental harm due to the presence of the defendant when she testified. The State called Lisa Litz. Ms. Litz had a Master's degree in education from the University of Florida, taught at the University of Cincinnati and Ohio about abused children, and was currently doing therapy with abused children and their families. Litz's CV was entered into evidence.  Her qualifications included over 10 years of experience in a variety of mental health and psychoeducational settings, over 20 years of experience in childcare settings, and she had recently served as an expert witness in determining the impact of children testifying

in open court in 2012. She was also a licensed marriage and family counselor, a registered play therapist, and a certified mental health counselor. She had been working at the Child Advocacy Center for about four years and had been in the counseling field for about 10 years. ECF No. 32-3 at 18-44.

The State asked Litz to evaluate the victim to determine whether testifying in the Petitioner's presence would be harmful to her.  Litz spoke with the victim's school guidance counselor, watched her CPT interview and deposition, and personally spoke with the victim for about an hour to evaluate her anxiety levels.  Defense counsel objected that Litz was not qualified as a psychologist or psychiatrist.  The trial court stated "I believe by statute, a licensed mental health counselor is qualified to give such an opinion," and the State concurred.  Litz testified that in the face of "intimate and intrusive" questions, the victim showed a high level of anxiety and even some "dissociative episodes".  Litz opined that if the victim were forced to testify in Petitioner's presence "[s]he would suffer a substantial emotional harm."  Litz conceded that the victim had expressed that she was not afraid of Petitioner, but explained that "there are any number of reasons that a child would say they were not afraid of someone who had hurt them. Children are very literal."  Litz testified that "in any of those questions, I

didn't hear about her being in a courtroom and telling her story in front of him.  That would be a big difference to a child."  ECF No. 32-3 at 18-44.

Following the hearing, the trial court made written findings that: (1) the victim was six years old at the time of the offense and would be eight years old at the time of trial; (2) Petitioner is the victim's grandfather; (3) Litz is a licensed mental health counselor with other relevant credentials and experience evaluating and counseling child victims of sexual abuse; (4) Litz previously testified as an expert in Florida's Eighth Judicial Circuit on the issue of whether child victims should be compelled to testify in the presence of the their alleged abusers; (5) Litz personally examined the victim in preparation for the hearing and reviewed her CPT interview, the police reports, the victim's deposition, and other case materials; (6) Litz testified that the victim was experiencing significant anxiety about the prospect of testifying at trial and engaged in a variety of psychological defenses when talking about the alleged sexual abuse; (7) Litz testified that in her professional opinion, to within a reasonable degree of professional certainty, there was a substantial likelihood that the victim would suffer at least moderate mental or emotional harm if she was compelled to testify at trial in the presence of Petitioner; (8) the court also reviewed the recording of the CPT interview; (9) after hearing the testimony and reviewing the

recording of the CPT interview, the court concluded there was a substantial likelihood that the victim would suffer at least moderate emotional or mental harm if compelled to testify in the presence of the Petitioner about the allegations of sexual abuse; and (10) Petitioner's right to confront the victim as a witness against him was adequately balanced with the interest of protecting the victim by the fact that counsel would be personally present during the testimony and would be permitted a full and fair opportunity to cross-examine the victim.  ECF No. 32-16 at 183-84.

Contrary to Petitioner's assertion, there is no prohibition under state or federal law that precluded the trial court from considering the opinion of a mental health professional in arriving at its decision. *See* § 92.54(5), Fla. Stat.  To the contrary, under its companion statute (§ 92.55), trial courts "shall" consider:

> (a) The age of the child, the nature of the offense or act, the relationship of the child to the parties in the case or to the defendant in a criminal action, the degree of emotional trauma that will result to the child as a consequence of the defendant's presence, and **any other fact that the court deems relevant**[.]

Fla. Stat. § 92.55(2)(a) (emphasis added). This includes opinion testimony of a licensed mental health care professional such as Litz.  For example, in *Leggett v. State*, 565 So. 2d 315, 316-17 (Fla. 1990), the Florida Supreme Court held: "There is no question of the competency of the single witness

who testified. She was a licensed, well-trained and experienced clinical social worker who had counseled the child at weekly intervals for more than a year." *Id.* The Florida Supreme Court found that there was sufficient evidence presented from which the trial court could have concluded "that the child would suffer at least moderate emotional or mental harm." *Id.* at 317.

The record in this case reflects that the trial court made detailed, individualized findings to arrive at the conclusion that the victim's interests could be protected by having her testify outside of Petitioner's presence, while preserving Petitioner's essential rights under the Confrontation Clause to fully and fairly cross-examine her.  As explained by this Court in *McDonald,* the Supreme Court's pronouncements on this issue in *Coy* and *Craig* do not prohibit the process utilized by the trial court in arriving at its decision.  Thus, the state courts' rejection of Petitioner's Confrontation Clause claim was not contrary to or an unreasonable application of federal law as determined by the United States Supreme Court.  *See McDonald*, 2014 WL 1328969, at *2.

**B.  *Prosecutorial Misconduct in Closing Argument***

Petitioner contends that his right to a fair trial was violated when the State in closing argument improperly claimed that the victim was truthful

and "no one believed she was lying," and made other remarks to evoke sympathy for her and bolster her credibility.  Petitioner asserts that the victim's "credibility was the crux of the case", and where witness credibility is pivotal the State's improper argument is prejudicially harmful.  ECF No. 11 at 14.

This issue was raised in Petitioner's direct criminal appeal. The specific remarks by the prosecutor underlying the appeal were: (1) "If you think that little girl was lying on Tuesday, go back in that room and acquit the Defendant. I suggest to you though that nobody thought she was lying. Nobody thought she was lying on November 1, 2011 [when she gave the CPT interview], and nobody thought she was lying on Tuesday [at trial];" (2) the victim's words were "Horrible, chilling truth;" and (3) "Remember her words. Remember her face. Remember her tears. And remember the pain that she will carry for the rest of her life. And I ask that you find the Defendant guilty as charged."  ECF No. 32-10 at 24-25, 39.   To the extent that Petitioner's argument is limited to these comments, the Respondent concedes that this claim was exhausted in Petitioner's direct appeal. Respondent further argues, however, that any error in allowing the arguments was unpreserved.  Petitioner's counsel objected to the first comment, and the trial court sustained the objection.  Counsel did not,

however, move for a mistrial or a curative instruction. Counsel did not

object to the other two comments.

It is well-settled that improper jury argument by the prosecution

violates a defendant's constitutional right to a fair trial in some

circumstances. *See, e.g., Cronnon v. State*, 587 F.2nd 246, 251 (5th Cir.

1978). "[T]he appropriate standard of review for such a claim on writ of

habeas corpus is 'the narrow one of due process, and not the broad

exercise of supervisory power.'" *Davis v. Kemp*, 829 F.2d 1522, 1527 (11th

Cir. 1987). The Court applies a two-step process in reviewing such a

claim: (1) the Court considers whether the argument was improper; and (2)

whether any improper argument was so prejudicial as to render the trial

fundamentally unfair. *Id*. at 1526. Thus, "'[t]he relevant question is whether

the prosecutors' comments 'so infected the trial with unfairness as to make

the resulting conviction a denial of due process.'" *Id*. at 1526-27 (quoting

*Donnelly v. DeChristoforo*, 416 U.S. 637 (1974)). A trial is fundamentally

unfair if there is a reasonable probability that but for the prosecutor's

improper remarks, the outcome of the trial would have been different.

*Williams v. Kemp*, 846 F.2d 1276, 1283 (11th Cir. 1988).

Upon this Court's review of the prosecutor's comments in the context

of the trial record as a whole, there is no reasonable probability that but for

the prosecutor's remarks – even if improper – the outcome of the trial would have been different.

The first comment was made in the context of the prosecutor's summarizing the victim's CPT statement and testimony in which she described the abuse in graphic detail.  The prosecutor stated to the jury that if, after watching the victim describe acts that "no six-year-old should have ever known about" the jury nevertheless thought she was lying, then they should acquit Petitioner.  The prosecutor referenced the victim's obvious pain and emotion during her testimony, and then said "[i]f you think that little girl was lying on Tuesday, go back in that room and acquit [Petitioner]. I suggest to you though that nobody thought she was lying. Nobody thought she was lying on November 1st, 2011, and nobody thought she was lying on Tuesday."  The trial court sustained defense counsel's objection.  The prosecutor then went on to explain why the evidence showed the victim was telling the truth:

> That little girl described what happened to her in childlike language because she doesn't know the real language. She described things that happened to her that she shouldn't have known about. And the only reason she knows about them is because they happened to her. And if there is only one thing that you take from the evidence in this case as you're considering the 33 exhibits, and as you're remembering the last couple days of testimony, if there is only one thing that you take from that, I submit that you take [her] words. I submit that you take the way [the victim] said her words. I submit to you they were the truth. Horrible, chilling truth.

ECF No. 32-10 at 24-25.

In the context of the record and the full closing arguments, the prosecutor's comments that "nobody thought she was lying" can fairly be read as focused on whether *the jury* believed what the victim said, and not a suggestion that unidentified third parties found the victim credible.  The prosecutor also invited the jury *to acquit the Petitioner* if they did not believe the victim's testimony.  ECF No. 32-10 at 24-25.  Moreover, as the State pointed out, Petitioner's defense was premised on suggesting that the victim's allegations were fabricated, thereby inviting the prosecutor to highlight reasons drawn from the evidence that she was credible.  Such reasons included her detailed description of sexual acts (accurately characterized by the prosecutor as "horrible") that are beyond the knowledge or experience of six-year-old children, and the consistencies of her descriptions in the CPT interview and trial testimony.  Further, in addition to the victim's testimony, the evidence of Petitioner's guilt was overwhelming and essentially unrebutted, including the physical evidence recovered from Petitioner's work van and the testimony of the victim's family members corroborating her description of some of Petitioner's sexual habits and their observations of physical manifestations of abuse and changes in the child's behavior, as summarized above.

Further, the trial court instructed the jury that:

> You should consider how the witnesses acted, as well as what they said. . . . This case must not be decided for or against anyone because you feel sorry for anyone, or are angry at anyone. . . . Your verdict should not be influenced by feelings of prejudice, bias, or sympathy. Your verdict must be based on the evidence, and on the law contained in these instructions.

ECF No. 32-10 at 80-83.  The jury is presumed to have followed the court's instructions.

Given the overwhelming evidence of Petitioner's guilt, it cannot be said that the isolated comments identified by Petitioner "'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'"  *Davis*, 829 F.2d at 1526-27.  On this record, Petitioner has failed to show that the state court's rejection of this claim was contrary to, or an unreasonable application of, federal law, or an unreasonable determination of the facts in light of the evidence contained in the state court record.

### C.  Ineffective Assistance of Trial Counsel

Petitioner asserted 11 ineffective-assistance claims in his state postconviction motion.  ECF No. 32-16 at 117-160.  Petitioner asserts the same claims in this Court, with the exception of his state claim number (3), which argued that counsel was ineffective for failing to move for a judgment of acquittal on the ground that the State failed to establish that Petitioner was over age 18, an element of the charging statute.  *See* ECF No. 32-16

at 123-24.  Petitioner concedes in the instant Petition that claim (3) has no merit.  ECF No. 11 at 17.  This Court will retain Petitioner's original numbering of his claims for ease of referring to the state record.

### Claim (1): Failure to Object to Closing Argument

Petitioner argues that his trial counsel rendered ineffective assistance for failing to object to the prosecutor's comments discussed above.  In rejecting this claim, the trial court on postconviction review noted that counsel *did* object to the first comment ("nobody thought she was lying"), and the objection was sustained. ECF No. 32-16 at 167. To the extent counsel erred by failing to request a curative instruction and move for a mistrial, the court found that Petitioner failed to establish prejudice under the second *Strickland* prong because there was no reasonable probability that the argument affected the outcome of the trial.  The court reasoned that the argument was mitigated by the State's suggestion to the jury that they should acquit Petitioner if they did not believe the victim.  The court observed that "'it will not be presumed that [the jury] is led astray, to wrongful verdicts, by the impassioned eloquence and illogical pathos of counsel.'"  *Id.* (quoting *Paramore v. State,* 229 So.2d 855, 860 (Fla. 1969)).  The trial court made the jury aware that the comment was improper by sustaining the objection.  *Id.*

The court concluded that the remaining comments (that the victim's words were "horrible, chilling truth" and that the jury should remember the victim's "words, remember her face, remember her tears and remember her pain")  did not amount to improper vouching or improper appeals to sympathy for the victim, but were inferences and conclusions that reasonably could be drawn from the testimony.  *Id.* The court further concluded that Petitioner failed to establish a reasonable probability that the State's argument affected the outcome of the trial.  *Id.*

Petitioner has failed to show that the state court's rejection of this claim on either the performance or prejudice prongs of *Strickland* was unreasonable.  For the same reasons as discussed above, the trial record amply supports the court's conclusions.  Because the state court's rejection of this claim was not contrary to, or an unreasonable application of federal law, Petitioner is not entitled to habeas relief.

### Claim (2): Failing to Object to State's Emphasis on Evidence

Petitioner argues that his counsel was ineffective for failing to object "to the State making the alleged victim's discharge [in her panties] a feature of the trial."  ECF No. 11 at 17.

In rejecting this claim, the state court explained:

The discharge found in the victim's panties was evidence supporting Defendant's guilt of the charged offense, as it corroborated the

victim's testimony that Defendant sexually battered her. Thus, it was not improper for the State to introduce testimony regarding it; nor was it improper for the State to reference it during its closing argument. And, the purportedly leading question by the State on redirect examination of Marilyn Barnes was not an improper question. For these reasons, counsel did not err by failing to object to any of this testimony. Accordingly, the claim raised is without merit.

ECF No. 32-16 at 169. [2]

Petitioner complains that the State improperly made the "discharge" evidence a "feature" of the trial, but the fact that the State highlighted important corroborative evidence that is unfavorable to the accused in no way renders the State's tactic improper, and Petitioner points to no authority suggesting otherwise.  Petitioner has failed to show that the state court's rejection of this claim on the performance prong of *Strickland* was contrary to, or an unreasonable application of, federal law.

### **Claim (4): Interference with Petitioner's Right to Testify**

Petitioner argues that his trial counsel was ineffective for "interfering" with his "right and desire to testify in his own behalf at trial."  ECF No. 11 at 17.  In his state postconviction motion, Petitioner claimed that counsel misled him into believing that testifying would "open the door for the State

---

[2] Marilyn Barnes was an ARNP who conducted a physical examination of the victim. Barnes was asked whether the victim's "history of discharge" could be linked to molestation, and Barnes replied "yes".  ECF No. 32-9 at 49.

to introduce evidence regarding the nature of [his] prior felony convictions."
ECF No. 32-16 at 170.  He contended that he would have testified that he
did not commit the charged offense and had never been accused by his
daughters of molestation, that the victim was lying at the direction of
Petitioner's ex-wife who believed that Petitioner was trying to cheat her out
of an inheritance, and that he would have explained that the victim's
clothes were in a garbage bag in his work van because his trash can was
full.  *Id.*

The state court rejected this claim, finding that there was not a
reasonable probability that his testimony would have affected the outcome
of the trial because it did not undermine the other evidence of his guilt.  The
court pointed to the corroborative testimony of the victim's mother and aunt
(both of whom are Petitioner's daughters), evidence that his ex-wife's
inheritance money was in a trust and she had no reason to fabricate the
victim's accusation to prevent Petitioner from accessing the money, the fact
that Petitioner would not have been allowed to testify that his daughters
had not accused him of molestation, and that it was the act of disposing of
the victim's clothes that was relevant evidence of consciousness of guilt
rather than specifically where he placed the garbage bag.  *Id.* at 171-172.

Lastly, the state court observed that Petitioner stated to the court,

under oath, that after conferring with counsel it was his decision not to testify and that no one had threatened or coerced him not to testify.  *Id.* at 172; *see* ECF No. 32-9 at 66-67.

A criminal defendant has a fundamental right to testify in his defense. *Rock v. Arkansas*, 483 U.S. 44, 52 (1987).  "Although often framed as a right to testify, it is more properly framed as a right to choose whether to testify."  *United States v. Hung Thien Ly*, 646 F.3d 1307, 1313 (11th Cir. 2011) (citing *United States v. Teague*, 953 F.2d 1525, 1532 (11th Cir.1992) (en banc)).  "Like other fundamental trial rights, the right to testify is truly protected only when the defendant makes his decision knowingly and intelligently."  *Hung Thien Ly*, 646 F.3d at 1313 (citations omitted).  "In cases where a defendant is represented by counsel, counsel is responsible for providing the advice needed to render the defendant's decision of whether to testify knowing and intelligent."  *Id*.  (citing *Teague*, 953 F.2d at 1533).

Petitioner has pointed to no evidence in the record that controverts the state court's finding at trial that Petitioner freely and voluntarily waived his right to testify, and the finding on postconviction review that counsel's performance in this regard was not deficient.  The trial transcript reflects that the court and counsel made an inquiry into whether Petitioner was

aware of his right to testify and the consequences of testifying, and

Petitioner willingly waived that right.  ECF No. 32-9 at 66-67. Moreover, in

light of the overwhelming evidence of his guilt, Petitioner has not shown

that there is any reasonable probability that the outcome of the trial would

have been different had he elected to testify at trial.  Under these

circumstances, Petitioner has failed to establish that the state court's

rejection of this claim was contrary to, or an unreasonable application of,

*Strickland*.

## Claim (5): Instruction on Lesser-Included Offenses

Petitioner contends that his counsel was ineffective for failing to

request jury instructions on lesser-included offenses.  ECF No. 11 at 17.

The state postconviction court rejected this claim as follows:

> Defendant is essentially arguing that had they been instructed on
> lesser included offenses the jury would have found him guilty of one
> of the lesser offenses instead of the charged offense. However, "[t]he
> possibility of a jury pardon cannot form the basis for a finding of
> prejudice." *Sanders v. State,* 946 So. 2d 953, 960 (Fla. 2006).
> "Therefore, a claim alleging ineffective assistance of counsel for
> failure to request an instruction on a lesser-included offense may be
> summarily denied." *Id.; see also James v. State,* 973 So. 2d 528,529
> (Fla. 5th DCA 2007) ("[A]n ineffective assistance of counsel claim
> may be summarily denied if the only allegation of prejudice is that the
> jury was unable to exercise its pardon power.").

ECF No. 32-16 at 173.  The court further noted that Petitioner agreed with

counsel's decision not to request any lesser-included offenses because

Petitioner "would be taking a dirt nap either way" since he was subject to having his parole from an earlier life sentence revoked regardless of the sentence he received in this case. *Id.* at 173-74; *see* ECF No. 32-9 at 85-86.

The record reflects that Petitioner understood his right to have the jury instructed on lesser-included offenses, had conferred with his lawyer about it, and agreed that it was his own decision not to have an instruction. ECF No. 32-9 at 83-84, 85-86. On this record, Petitioner has failed to show that the state court's rejection of this claim on both the performance and prejudice prongs of *Strickland* was contrary to, or an unreasonable application of, federal law.

### Claim (6): Failure to Call Expert Witness

Petitioner claims that his counsel was ineffective for failing to call expert witnesses to refute the opinion testimony of the State's experts, Debra Esernio-Jenssen and Marilyn Barnes. ECF No. 11 at 17. In his postconviction motion, Petitioner claimed that an expert could have testified that physical trauma from sexual abuse would have been evident on the victim, and that the victim could have been projecting memories of having been molested by a different person when she was two or three years old. ECF No. 32-16 at 130-31.

Petitioner conceded that during trial his counsel requested a recess to discuss whether their retained expert, Dr. Harry Krop, should testify. Counsel stated on the record: "there are things that I think Dr. Krop can testify about that may both help and hurt the case.  So there has to be a decision made by my client whether one outweighs the other, and with my advice."  *Id.* at 133.  Petitioner states that counsel advised him that he did not think Dr. Krop should testify and that counsel could not "get an expert witness to say what I want them to say."  *Id.*

At trial, Petitioner's counsel informed the court of his discussion with Petitioner and stated "I think we'll both agree that it is better not to call Dr. Krop and to also not have rebuttal then.  My understanding is if Dr. Krop is not called, Dr. Dikel [the State's rebuttal expert] will not be called."  ECF No. 32-9 at 68-69.

The court then inquired of Petitioner: "You've talked with your attorney about the trial strategy, about whether or not to call Dr. Krop?" Petitioner responded: "Yes, I have".  The court asked: "And you're in agreement with the decision that's being made not to call him to the stand?"  Petitioner stated:  "Yes, I am."  *Id.* at 68-69.

The state postconviction court rejected this claim, finding that Petitioner's assertion that counsel could have obtained an expert to testify

in the manner that they wanted "conclusory" and "based on nothing more than mere conjecture and speculation."  The court noted that both State experts testified that it was normal not to find trauma to the child-victim's genitalia absent an acute assault, which was not the circumstance in this case.  The court concluded "it is unlikely that counsel could have found a credible expert to testify to the contrary," and rejected Petitioner's ineffective-assistance claim on both the performance and prejudice prongs of *Strickland*.  ECF No. 32-16 at 174-75.

Petitioner points to nothing in the record that suggests the state court's conclusion was anything but reasonable given the fact that Petitioner agreed on the record that it was a strategic decision not to call Dr. Krop, and nothing in the record suggests that any expert would have testified as Petitioner now claims.  Petitioner has failed to show that the state court's rejection of this claim was contrary to, or an unreasonable application of, federal law.

### Claim (7):  Failure to File Motion in Limine Regarding Computer

Plaintiff contends that his trial counsel was ineffective for failing to file a motion in limine to prevent any mention of his laptop computer at trial.  ECF No. 11 at 17.  This claim is based on the State's opening argument which mentioned a laptop computer that was recovered from Petitioner's

work van.  Subsequent to opening argument, the court ruled that evidence
and testimony relating to the laptop was inadmissible.  *See* ECF No. 32-16
at 134-37.

During opening, the prosecutor stated that a computer had been
recovered and forensic analysis determined that the computer had been
used to access pornography, and that efforts had been made to "clean up"
the computer before police examined it.  ECF No. 32-5 at 73.  The victim
had stated in her CPT interview that she watched "scary" movies with
nudity on a television with Petitioner.  ECF No. 32-6 at 75.  The trial court
concluded that there was an insufficient nexus between the alleged offense
and Petitioner's laptop, and precluded any further mention of the laptop. *Id.*
at 75-77.

In rejecting this claim on postconviction review, the state court
concluded:

> Given the fact that Defendant's computer was excluded at trial, had
> counsel filed a motion in limine, the computer would have been
> excluded prior to trial. And, it is clear from the record that counsel
> was aware of the computer prior to trial. Thus, counsel erred by
> failing to move to exclude the computer prior to trial. However, even
> though counsel erred, Defendant fails to show any prejudice because
> there is not a reasonable probability that this error affected the
> outcome of the trial. After the State's opening statement, the
> computer was only tangentially mentioned once more,
> by a witness (Glenn Jones), during the *three-day* trial (July 9-11,
> 2013). And, the jury did not inquire about it during deliberations.
> Therefore, there is no reason to believe that the State's mention of

the laptop during its opening statement was considered by the jury in its determination of Defendant's guilt. Accordingly, the claim raised is without merit.

ECF No. 32-16 at 176.

Petitioner points to nothing in the record that suggests the state court unreasonably concluded that the error by counsel did not affect the outcome of the trial because the laptop was mentioned only briefly and was excluded from evidence with no further mention by the State.  Petitioner has failed to show that the state court's rejection of this claim on the prejudice prong of *Strickland*  was contrary to or an unreasonable application of federal law.

## Claim (8):  Failure to File Motion to Suppress

Petitioner claims that his counsel was ineffective for failing to move to suppress the evidence recovered from his work van.  ECF No. 11 at 17. Petitioner argued in his state postconviction motion that the part of the search warrant that permitted searches of vehicles on the premises and/or the curtilage was not requested within the search warrant application and affidavit.  His work van was owned by "Mark Hurm & Co.", which gave consent for the search.  A deputy recovered Petitioner's laptop from the van while it was on his premises.  The van subsequently was moved to the owner's business.  While it was there, the owner conducted an inventory of

the van and found the garbage bag containing the victim's clothing.

Petitioner argued that this evidence should have been excluded.  *Id.* at

138-40.

The state postconviction court determined that Petitioner's own

factual allegations refuted his claim, citing numerous cases holding that a

vehicle found on the premises to be searched is included within the scope

of a warrant if objects of the search might be located in a vehicle.  ECF No.

32-16 at 177.  The court further noted that the van was not owned by

Petitioner and was returned to the owner after the initial search.  The owner

then discovered the garbage bag and clothing.  The court concluded

"[o]nce the vehicle was returned to the owner, Defendant no longer had

standing to object to its search by law enforcement, especially given the

fact that the owner consented to the search and the fact that the vehicle

was no longer in Defendant's possession."  *Id.* at 178.  Thus, had counsel

moved to suppress the clothing recovered from the van, the motion would

have been denied and counsel did not err by failing to move to suppress it.

*Id.*

Petitioner has shown no error in the state court's conclusion.

Petitioner has failed to show that he would have had any standing to

contest the search of the van after it was returned to the owner and then

searched with the owner's consent.  Counsel is not ineffective for failing to make non-meritorious motions.  Petitioner has failed to show that the state court's rejection of this claim on the prejudice prong of *Strickland* was contrary to, or an unreasonable application of, federal law.

### Claims (9) through (11):  Errors Relating to Victim's Testimony

Petitioner's remaining three claims all relate to the trial court's decision to allow the victim to testify via closed circuit television.  ECF No. 11 at 17.  Petitioner first contends that his counsel should have opposed the State's motion by securing expert testimony or filing a memorandum of law (Claim 9).  Next, Petitioner contends that his counsel deprived him of his right to be present at a critical stage of trial (during the victim's testimony) (Claim 10).  Finally, Petitioner contends that his counsel was deficient for "acquiescing" to the court's decision and failing to move for a mistrial (Claim 11).  ECF No. 11 at 17-18.

As explained above, the underlying substantive issue regarding the victim's testimony does not present any grounds for habeas relief.  As an ineffective-assistance claim, as the state postconviction court found, counsel did vigorously oppose the State's motion to allow the child to testify outside of Petitioner's presence. *See* ECF No. 32-16 at 178-79; ECF No. 32-3 at 17-43.  The state postconviction court concluded that it would have

granted the State's motion even if counsel had called an expert to testify at the hearing or had filed a memorandum of law after the hearing.  The evidence before the court was sufficient for the court to find that the victim should be permitted to testify outside of Petitioner's presence.  Further, the method used for the victim's testimony did not cause Petitioner to be "absent" during a critical stage of the trial.  Petitioner was not prevented from watching all of the victim's testimony, or from consulting with counsel to aid in cross-examination.  Petitioner points to nothing in the record that shows he was deprived of the opportunity to effectively communicate with his counsel regarding counsel's cross-examination of the victim.  Petitioner has failed to show counsel was in any way deficient in his performance once the court had decided that the victim should be permitted to testify out of his presence.  Petitioner's claim that his counsel "acquiesced" in any way to a deprivation of his constitutional rights is squarely refuted by the trial record.  The state court rejected these claims on both the performance and prejudice prongs of *Strickland.  See* ECF No. 32-16 at 178-82.  Petitioner has failed to show that this decision was contrary to, or an unreasonable application of, federal law.

## V.  <u>Certificate of Appealability</u>

Section 2254 Rule 11(a) provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)."  A timely notice of appeal must still be filed, even if the court issues a certificate of appealability. Rule 11(b), Rules Governing Section 2254 Cases.

The undersigned finds no substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483–84 (2000). Therefore, the undersigned recommends that the district court deny a certificate of appealability in its final order.

Rule 11(a) also provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue."  Thus, if there is an objection to this recommendation by either party, that party may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation.

## VI.  Conclusion

For the foregoing reasons, it is respectfully **RECOMMENDED** that the

petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, ECF No.

11, should be **DENIED** and a COA should be **DENIED.**

**IN CHAMBERS** this 15th day of October 2021.

*s/Gary R. Jones*
GARY R. JONES
United States Magistrate Judge

## NOTICE TO THE PARTIES

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof.  Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.  A copy of objections shall be served upon all other parties.  If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.  *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636**.